**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**JACK COPPINGER,**

      **Plaintiff,**                             **Case No. 3:07cv458/MCR/MD**

**v.**

**WAL-MART STORES, INC., et al.,**

      **Defendants,**
_____/

# O R D E R

Before the court is Defendants Wal-Mart Stores, Inc., Wal-Mart Stores East, L.P., Wal-Mart Stores East, Inc., and Elwin Jones' ("Wal-Mart") Motion for Leave to File Motion for Summary Judgment Out of Time (doc. 121). Wal-Mart seeks final summary judgment on Plaintiff Jack Coppinger's ("Coppinger") claim that Wal-Mart intentionally discriminated against him based on race and sex in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) *et seq.*, when it allegedly demoted him from a supervisory position.[1] On September 30, 2009, the court granted Wal-Mart's motion for partial summary judgment on Coppinger's claims that Wal-Mart violated Title VII by constructively discharging him and violated § 1981 and Title VII by denying him two promotions given to a Hispanic woman.[2] On October 14, 2009, Wal-Mart filed the instant

---

[1] As the court noted in its earlier order, Coppinger's claims under § 1981 are subject to the same standard of proof as under Title VII, and the court does not distinguish between these standards in discussing Wal-Mart's motion. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). The court also noted that individual capacity suits against defendants like Elwin Jones are inappropriate under Title VII. *See Albra v. Advan, Inc.*, 490 F.3d 826, 833 (11th Cir. 2007) ("[T]here is no individual liability for violations of Title VII.") (citation omitted).

[2] Wal-Mart did not seek summary judgment on Coppinger's demotion claim in its prior motion. On October 14, 2009, Wal-Mart filed the instant motion under three alternatives: (1) as a motion to amend the court's judgment pursuant to Fed. R. Civ. P. 59(e); (2) a motion for relief from judgment pursuant to Rule 60(b); or (3) one to file a motion for summary judgment out of time. Neither Rule 60(b) nor Rule 59(e) applies to this matter. Rule 60(b)(1) allows a court to "relieve a party . . . from a final judgment, order, or proceeding" because of mistake. Wal-Mart argues that it is entitled to relief under Rule 60(b) because it failed to raise the

motion seeking summary judgment on the remaining demotion claim. Coppinger failed to file a timely response.[3] After carefully considering Wal-Mart's motion and the entire record, the court concludes that Wal-Mart should be allowed to file its motion for summary judgment out of time and that the motion for summary judgment should be granted.

## STANDARD OF REVIEW

A motion for summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is "material" if it could affect the outcome of a suit under the governing law. *Id*. The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc*., 975 F.2d 1518, 1534 (11th Cir. 1992).

---

demotion issue in its former motion under the mistaken belief that claim was no longer part of Coppinger's case. Nevertheless, "[b]y its own terms, Rule 60(b) applies only to judgments that are final." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 99 F.3d 538, 541 (2d Cir. 1996). Rule 59(e) allows a court to amend a judgment, but " the strictures of Rule 59(e) remain dormant . . . until a final judgment has been entered." *Hertz Corp. v. Alamo Rent-A-Car, Inc*., 16 F.3d 1126, 1132 (11th Cir. 1994). As the Eleventh Circuit has made clear, an order of partial summary judgment that leaves some claims pending in a case is not a final decision unless the parties seek an entry of final judgment pursuant to Rule 54(b). *See Mesa v. United States*, 61 F.3d 20, 21 (11th Cir. 1995). Neither party has sought a Rule 54(b) order in this case. Moreover, Wal-Mart does not assert grounds to amend or reconsider the September 30, 2009, order, which granted summary judgment on all the issues Wal-Mart raised. Instead, Wal-Mart seeks an additional order covering the demotion claim raised for the first time here.

[3] Pursuant to Local Rule 7.1(A) & (C), Coppinger was required to file his response within 14 days of the service of Wal-Mart's motion, which occurred on October 14, 2009. The response, therefore, was due by October 28, 2009. Coppinger filed his response without a memorandum of law on November 4, 2009. Coppinger also failed to serve a concise statement of disputed facts as required by Local Rule 56.1(A), and he is thus deemed to have admitted Wal-Mart's version of the facts. *See* Local Rule 56.1(A).

Case No. 3:07cv458/MCR/MD

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  Once the movant satisfies its burden of showing the absence of a genuine issue of material fact, the burden shifts to the nonmovant to produce "specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (emphasis omitted).  A general denial unaccompanied by any evidentiary support is not sufficient.  Fed. R. Civ. P. 56(e)(2). Instead, the nonmoving party must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604,608 (11th Cir. 1991).

Title VII makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex. . ." 42 U.S.C. § 2000e-2(a)(1).  Absent direct evidence of discrimination, a claim of disparate treatment under Title VII is examined under the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, the plaintiff has the burden to establish a *prima facie* case of discrimination by a preponderance of the evidence, which, if satisfied, creates a presumption the employer's action was discriminatory.  *Id*. at 802.  An employer can rebut this presumption by offering a legitimate, nondiscriminatory reason that supports a finding the employer's action was not based on unlawful discrimination. *Id.*; *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993).  To do so, the employer must produce evidence which, taken as true, permits a reasonable fact finder to conclude there was a nondiscriminatory reason for the employment decision.  *St. Mary's Honor Center*, 509 U.S. at 509.  Once the presumption is rebutted, the burden shifts back to the plaintiff to show the employer's reason was not the genuine cause for the adverse action but merely a pretext for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 804.  The ultimate burden remains with the plaintiff to raise a genuine issue of material fact as to whether the employer's explanation is

pretextual and that discrimination was the true cause for the employment decision. *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008).

**DISCUSSION**[4]

1.  The Time-Bar Issue

Coppinger alleges Wal-Mart unlawfully demoted him when it reassigned him from "overnight lead grocery stocker" to a "level two grocery stocker" in June, 2004, and later removed his supervisory duties in February, 2005.[5] Wal-Mart argues that Coppinger cannot assert his demotion claim because he failed to file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The court agrees that Coppinger's demotion claim is time-barred. A plaintiff cannot file a complaint regarding an alleged Title VII violation unless he first raises the same claim with the EEOC. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000). In a deferral state like Florida, a person who believes he has been discriminated against in violation of Title VII must file a charge with the EEOC within 300 days of receiving notice of the employer's alleged unlawful action.[6] *See* 29 U.S.C. § 626(d)(2); *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). This limitations period does not begin to run "until the facts that would support a charge of discrimination under Title VII were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff." *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660 (11th Cir. 1993) (citation omitted). Coppinger's EEOC charge alleges that Wal-Mart

---

[4] The facts outlined in the court's earlier order apply to Coppinger's demotion claim, and the court does not restate the factual background here.

[5] Coppinger alleges he was still a lead grocery stocker as of July 18, 2004, but had been reclassified as of an unspecified date in August, 2004. Nevertheless, Wal-Mart's statement of undisputed material facts, which Coppinger has not contested, states that the new pay grade system was implemented in June, 2004, and that Coppinger's supervisory duties were removed in February, 2005.

[6] A deferral state is one that has a state law prohibiting the employment action at issue as well as a state entity authorized to grant or to seek relief for persons complaining of such discrimination. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1100 n.21 (11th Cir. 1996). Florida is a deferral state, *see McKelvy v. Metal Container Corp.*, 854 F.2d 448, 451 (11th Cir. 1988), and has established the Florida Commission on Human Relations to hear claims of employment discrimination. *See Mason v. K Mart Corp.*, 1 F. Supp.2d 1333, 1334-35 (M.D. Fla. 1998).

removed his supervisory duties in March, 2005, but Wal-Mart argues that the record shows this action occurred in February, 2005. Coppinger does not contest this argument, and Coppinger himself testified in his deposition that Wal-Mart took away his supervisory duties, at the latest, by the end of February, 2005. As a result, Coppinger was required to file his charge of discrimination no later than 300 days after February 28, 2005, or by December 27, 2005. He filed the charge on January 6, 2006. Consequently, the EEOC charge could only cover alleged discriminatory actions that occurred 300 days prior to January 6, 2006, or as of March 12, 2005. Coppinger's demotion claim, therefore, is time-barred because it was not timely filed with the EEOC.[7]

2.   The Demotion Issue

Even if his EEOC charge were timely, Coppinger can only show a *prima facie* case of discriminatory demotion by demonstrating: (1) he is a member of a protected group; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) a similarly situated employee outside his protected class was treated differently. *See Denny v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Wal-Mart does not dispute that Coppinger – a Caucasian male – is a member of a protected class or that he was qualified for the position of overnight lead grocery stocker. Instead, it argues that Coppinger cannot show a *prima facie* case of discrimination because (1) Wal-Mart's actions did not constitute an adverse employment action, and (2) Coppinger has not identified a similarly situated person outside his protected class who was treated differently. A change in job duties can be actionable under Title VII if it rises to the level of an adverse employment action. *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998). As the court explained in its earlier order, no uniform rule exists for determining whether this standard has been met, but without question an employee must demonstrate "a *serious and material* change" in the terms or conditions of employment. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). Actions without tangible job consequences, including nonmaterial

---

[7] The employment actions discussed in the court's earlier order occurred after March 12, 2005, and are not subject to this time bar.

reassignments of job duties, do not qualify. *Id*. Courts use an objective standard for this determination, asking whether a reasonable person in the plaintiff's position would view the job changes at issue as adverse. *See Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1448 (11th Cir. 1998).

The court agrees that Coppinger's June, 2004, change in job title from overnight stocker to level two stocker did not constitute an adverse employment action. Prior to June, 2004, Coppinger acted as the supervisor of Wal-Mart's other overnight grocery stockers twice a week when his own supervisor, Rex Lucas, was away from work. Although Coppinger's new job title did not include supervisory duties, Wal-Mart continued to allow Coppinger and Lucas to supervise other Wal-Mart stockers for nine months between June, 2004, and February, 2005. Coppinger's pay did not change between the time Wal-Mart began the new pay system and Coppinger's resignation from the company on February 11, 2006. In the absence of any immediate change to his duties or a change in pay, Coppinger's new job title in June, 2004, was, in itself, only a *de minimis* alteration that is not actionable under Title VII.[8]

Coppinger, however, also alleges he suffered an adverse employment action when Wal-Mart eventually stripped him of his supervisory duties in February, 2005. Coppinger had complained after June, 2004, that his new job title did not reflect the work he was doing because it did not allow for the supervisory duties Wal-Mart continued to ask him to perform. Store manager, Elwin Jones, agreed and raised this issue with a Wal-Mart personnel officer, Bea Floyd, who worked in the regional office to which his store reported. Floyd told Jones that no level two stocker was allowed to take a supervisory role; only employees in the higher grade of overnight support manager could do so. As a result, Jones relieved Coppinger of his supervisory duties in February, 2005, although Coppinger

---

[8] Even if Wal-Mart had enforced Coppinger's new job description in June, 2004, its decision would not have been actionable under Title VII because Coppinger suffered no change to his pay or benefits. In contrast to the new pay system, Coppinger was not entitled to extra pay for supervisory duties under Wal-Mart's earlier pay system. Consequently, taking those duties away did not involve any tangible harm. *See Davis*, 245 F.3d at 1244 (stating that courts hesitate to find that "changes in job duties amount to adverse employment action when unaccompanied by any tangible harm.").

retained the same pay and benefits he had enjoyed before and after Wal-Mart instituted its new pay system in June, 2004.

The court finds that the removal of Coppinger's supervisory duties constituted an adverse employment action. Wal-Mart argues that Coppinger did not suffer an adverse employment action because his pay and benefits were never altered after the company initiated its new pay system. Changes in compensation and benefits, however, are not the only material alterations that can give rise to a Title VII discrimination claim. Changes that involve a "loss of prestige, or diminishment of responsibilities" can be adverse, *Dekalb County School Dist.*, 145 F.3d at 1448, as can alterations to the conditions and privileges of employment that involve "*significantly* different responsibilities." *Davis*, 245 F.3d at 1239 (citation omitted). Wal-Mart overlooks the fact that it asked Coppinger to perform duties ordinarily assigned only to higher-level supervisors for nine months after June, 2004, even though Coppinger's job description plainly disallowed such tasks. The record does not suggest Coppinger had reason to believe these duties were only temporarily part of his job, and Wal-Mart does not argue they were contingent on subsequent approval by management. By disregarding its own job description for nine months, Wal-Mart in effect gave Coppinger duties that required a formal promotion under the new pay system. As Coppinger was aware, the new system mandated a higher pay grade for supervisors, and allowing Coppinger to supervise employees left Wal-Mart with two options: (1) take those duties away and pay Coppinger for having performed tasks outside his job description or (2) promote him to the higher pay grade of overnight support manager.[9] Wal-Mart chose the first option and paid Coppinger $2,364.28 for the difference between what he was paid as a level two stocker from June, 2004, to February, 2005, and the salary he would have earned had he been an overnight support manager. Indeed, Wal-Mart considered Coppinger's supervisory tasks as evidence of a leadership position that presumably entitled him to greater status, as well as higher pay; on November 6, 2005, Elwin Jones

---

[9] In its earlier motion, Wal-Mart conceded that Coppinger's co-worker, Sandra Loggans, was promoted when she was elevated from a level two stocker to overnight support manager and allowed to supervise Coppinger on the two nights Rex Lucas was not at work. Loggans' new supervisory position involved the same job duties Wal-Mart took away from Coppinger in February, 2005.

wrote Coppinger a letter in which he offered to apologize at a store meeting "for having you on [sic] a leadership position without proper pay grade classification and compensation. The fact [is] that it was not fair to . . . you[.]" Accordingly, the court finds that Wal-Mart's removal of Coppinger's supervisory duties was "so substantial and material that it indeed alter[ed] the terms, conditions, or privileges of [his] employment." *Davis*, 245 F.3d at 1245 (citation omitted).

Nevertheless, the court agrees with Wal-Mart that Coppinger cannot show a *prima facie* case of discrimination because he has not alleged, and has not argued, that anyone outside his protected class was treated differently. To carry his burden of proof, Coppinger must demonstrate that a non-white or female Wal-Mart employee was treated differently from himself. *See Lathem v. Dep't of Children and Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999) ("If two employees are not 'similarly situated,' the different application of workplace rules does not constitute illegal discrimination."). In his complaint, Coppinger fails to identify any overnight grocery stocker who was not reclassified as a level two stocker when Wal-Mart instituted its new pay grade system in June, 2004. The new system was implemented nationwide, and Wal-Mart argues that it applied the pay grades equally to male and female employees of various races. No evidence in the record contradicts this contention. Coppinger also fails to allege or cite any portion of the record showing that a non-white or female employee who was reclassified as a level two stocker was allowed to carry out supervisory duties after his were taken away. "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004) (citation omitted). In the absence of such evidence, the court finds that Coppinger has not shown a *prima facie* case of demotion.[10]

---

[10] Wal-Mart further argues that even if Coppinger has shown a *prima facie* case of discrimination, the fact that Coppinger's pay grade did not permit him to perform supervisory duties is a legitimate, non-discriminatory reason for its actions. The court agrees that Wal-Mart's actions were based on the duties stipulated for a level two grocery stocker, and nothing in the record suggests Wal-Mart was motivated by a discriminatory animus. Moreover, Coppinger has failed to argue that Wal-Mart's preferred reason for its actions is pretextual and that a discriminatory motive was the real reason for the change in his job duties.

**CONCLUSION**

Coppinger has not shown a genuine issue of material fact that Wal-mart unlawfully demoted him by changing his job title in June, 2004, or by removing his supervisory duties in February, 2005.  Accordingly,

1.    Defendants Wal-Mart Stores, Inc., Wal-Mart Stores East, L.P., Wal-Mart Stores East, Inc., and Elwin Jones' Motion For Leave to File Motion for Summary Judgment Out of Time (doc. 121) is GRANTED;

2.    The clerk is directed to enter final judgment in favor of defendants Wal-Mart Stores, Inc., Wal-Mart Stores East, L.P., Wal-Mart Stores East, Inc., and Elwin Jones, with costs taxed against the plaintiff, and CLOSE the case.

**DONE AND ORDERED** this 22nd day of March, 2010

s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**